## UNITED STATES DISTRICT COURT

### EASTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| UNITED STATES OF AMERICA | CRIMINAL COMPLAINT |
| v. | |
| WILLIAM M. BRUNNER, a/k/a/ "Big," and CINJINIO L. WARD, | CASE NUMBER: 10-M-427 |

I, Bryan F. Kastelic, the undersigned complainant, being duly sworn, state the following is true and correct to the best of my knowledge and belief:

**Count One:** Beginning by at least September 2009, and continuing through until the present time, in the City of Milwaukee, and in the State and Eastern District of Wisconsin, William M. Brunner did knowingly and intentionally conspire to possess with the intent to distribute and distribute MDMA (3,4 Methylenedioxy-Methamphetamine, a Schedule I controlled substance commonly refrred to as "ecstasy," in violation of Title 21, United States Code, §§ 841(a)(1), 841(b)(1)(C), and 846; **Count Two:** On January 12, 2010, in the City of Milwaukee, and in the State and Eastern District of Wisconsin, William M. Brunner and Cinjinio L. Ward did knowingly sell a counterfeited obligation of the United States, that is, a one-hundred dollar Federal Reserve Note, with the intent that the same be passed, published and used as true and genuine, in violation of Title 18, United States Code, Section 473.

I further state that I am a Special Agent assigned to the Division of Criminal Investigation, Wisconsin Department of Justice, and this complaint is based on the following facts:

Please see the attached affidavit of Special Agent Bryan F. Kastelic.

Continued on the attached sheet and made a part hereof: __X__ Yes ___ No

_____
Signature of Complainant: Bryan F. Kastelic

Sworn to before me and subscribed in my presence,

January 28th, 2010      at Milwaukee, Wisconsin
Date                              City and State

The Honorable William E. Callahan, Jr.
United States Magistrate Judge                _____
**Name & Title of Judicial Officer**          Signature of Judicial Officer

Case 2:10-mj-00427-WEC   Filed 01/28/10   Page 1 of 14   Document 1

U.S. District Court
Eastern District of W[...]
I h[...]
true a[...]
now rem[...]
of[...]
W[ILLIAM] E. CALL[AHAN]
U.S. M[a]gistrate J[...]
DATED: 1/28/10
By: EC
Deputy Clerk

# UNITED STATES DISTRICT COURT

### EASTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| UNITED STATES OF AMERICA | CRIMINAL COMPLAINT |
| v. | |
| WILLIAM M. BRUNNER, a/k/a/ "Big," and CINJINIO L. WARD, | CASE NUMBER: 10-M-427 |

I, Bryan F. Kastelic, the undersigned complainant, being duly sworn, state the following is true and correct to the best of my knowledge and belief:

**Count One:** Beginning by at least September 2009, and continuing through until the present time, in the City of Milwaukee, and in the State and Eastern District of Wisconsin, William M. Brunner did knowingly and intentionally conspire to possess with the intent to distribute and distribute MDMA (3,4 Methylenedioxy-Methamphetamine, a Schedule I controlled substance commonly refrred to as "ecstasy," in violation of Title 21, United States Code, §§ 841(a)(1), 841(b)(1)(C), and 846; **Count Two:** On January 12, 2010, in the City of Milwaukee, and in the State and Eastern District of Wisconsin, William M. Brunner and Cinjinio L. Ward did knowingly sell a counterfeited obligation of the United States, that is, a one-hundred dollar Federal Reserve Note, with the intent that the same be passed, published and used as true and genuine, in violation of Title 18, United States Code, Section 473.

I further state that I am a Special Agent assigned to the Division of Criminal Investigation, Wisconsin Department of Justice, and this complaint is based on the following facts:

Please see the attached affidavit of Special Agent Bryan F. Kastelic.

Continued on the attached sheet and made a part hereof:   X Yes ___ No

_____
Signature of Complainant: Bryan F. Kastelic

Sworn to before me and subscribed in my presence,

January 28th, 2010        at Milwaukee, Wisconsin
Date                       City and State

The Honorable William E. Callahan, Jr.
United States Magistrate Judge     _____
Name & Title of Judicial Officer    Signature of Judicial Officer

# AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT

I, Bryan F. Kastelic, being first duly sworn on oath, state that:

## A. PURPOSE AND BACKGROUND

1. I am a special agent for the Wisconsin Department of Justice, Division of Criminal Investigation (hereinafter DCI), working in the Milwaukee, Wisconsin District Office. I have been employed as a DCI agent for 3 years. Prior to this, I was employed by the Brown County Sheriff's Department for over ten years. Over six years of this employment I was assigned to the Brown County Drug Task Force as a Narcotics Investigator. In the course of my work, I investigate violations of state and federal drug trafficking laws.

2. The information contained in this affidavit is based upon my personal observations and investigation, information relayed to me by other law enforcement agents and officers, and through official law enforcement reports. To the extent that the information is not based upon my personal knowledge, I believe it to be truthful and reliable.

## B. DESCRIPTION OF INDIVIDUALS FOR WHOM A CRIMINAL COMPLAINT IS SOUGHT

3. This affidavit is made in support of a criminal complaint against William M. Brunner (a/k/a "Big," dob: 01/20/1978) for conspiracy to distribute and distribution of MDMA (3,4 methylenedioxy-methamphetamine) a Schedule I controlled substance commonly referred to as "ecstasy," in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(C), and 846, and selling counterfeit United States currency in violation of 18 U.S.C. § 472. This affidavit is made in support of a criminal complaint against Cinjinio Ward for selling counterfeit United States currency in violation of 18 U.S.C. § 473.

## C. PROBABLE CAUSE

4. For the past several months, I have been in involved in the investigation of two ecstasy traffickers operating in the Milwaukee, Wisconsin. Confidential Informant information, controlled buys, surveillance, and records review have established that Christmas Y. Davis (a/k/a "Dia," dob: 02-21-82 / 02-21-84) and an unknown black male, nicknamed "Big," have been distributing quantities of ecstasy and marijuana. The investigation has also established that Davis has sold counterfeit United States currency.

5. On September 29, 2009 a confidential informant arranged a drug transaction with Christmas Y. Davis. The CI had previously informed me that he/she has known Davis since 2005 and knew Davis to sell marijuana and ecstasy. The CI also informed me that he/she knew Davis to use ecstasy and to date a man named "Big." The CI informed me that Davis and "Big," who drove either a Dodge Intrepid or a red Cadillac, recently offered to sell the CI a pound of marijuana for $1,300 or a "half jar" (fifty tablet quantity) of ecstasy for $650. The CI told me that Davis had provided the CI with her cell phone number to purchase the controlled substances. The CI later identified a photograph of Christmas Y. Davis (dob: 02-21-82 / 02-21-84) as Davis. I believe the CI to be credible and reliable because he/she has provided specific information which has been corroborated through various investigative means, has provided information that could be used against his/her penal interest, and has attended all meetings and obtained all information as directed. The CI is cooperating in an attempt to earn consideration in a state case.

6. Based on the CI's information, I attempted to identify "Big." I researched previous police reports for Christmas Y. Davis. According to the reports, one of Davis's known associates is an individual known as Kieuta Z. Perry (dob: 5/19/1977). Perry's physical description matched the physical description of "Big" as provided by the CI. I then showed the booking photo of Perry to

2

the CI, who indicated that was the individual he/she knew as "Big." Later surveillance, described below, including a video recording of the November 3, 2009, transaction, all appeared to confirm that Perry was, in fact, "Big." However, recent investigation has revealed that Perry is currently incarcerated at the Racine Correctional Institution and has been incarcerated since 2003.

7. On September 29, 2009, the CI arranged, in monitored telephone calls, to purchase 50 ecstasy tablets for $650 from Davis at Davis' mother's house located at 3328 North 30th Street, Milwaukee Wisconsin. After arranging the transaction, the CI was searched for contraband, money, and controlled substances with negative results. The CI was then outfitted with a recording device and wireless transmitter and surveilled driving to the 3300 block of North 30th Street. At approximately 12:21 p.m. a Dodge Intrepid, with Wisconsin license plate 741-PYT (registered to Christmas Y. Davis, at **subject premises #1,** 6307 North 100 St. Apartment No. 4, Milwaukee Wisconsin) drove onto N. 30th St. and parked by the CI's vehicle. Christmas Y. Davis exited her vehicle and met with the CI.

8. The CI later stated, and an audio recording confirmed that he/she followed Davis into the residence (3328 N. 30th St) and gave Davis the $650. Davis then placed a cell phone call and told the CI that she would have to go and pick up the ecstasy. The CI then exited the residence with Davis. The CI remained outside the residence. Davis was surveilled driving to the area of 3280 and 3276 N. 26th St. At 12:55 p.m. an unknown male met with Davis at the N. 26th St. location. After this meeting, Davis was surveilled driving back to meet with the CI. At 1:02 p.m., Davis met with the CI and handed the CI four plastic baggies containing multiple pills of ecstasy.

9. After the deal was complete, the surveillance team followed the CI from the area. I recovered the baggies and then field tested the suspected ecstasy and received a positive test for

3

the presence of MDMA. I also confirmed that each baggie contained 25 pills with a total count of 100 pills.

10. On Wednesday, October 7, 2009, the CI arranged a second drug transaction in a monitored telephone call with Christmas Y. Davis. During this arrangement, Davis stated that she had "fronted" or given an additional 50 pills to the CI during the buy conducted on September 29, 2009, and that the CI owed her $450. After arranging the transaction, the CI was searched for contraband, money, and controlled substances with negative results. The CI was then outfitted with a recording device and wireless transmitter and surveilled driving to the 3300 block of North 30th Street.

11. At approximately 2:45 p.m. that day, I observed the same Dodge Intrepid from the September 29, 2009, transaction drive onto N. 30th St., and park, near the CI's vehicle. Christmas Y. Davis exited her vehicle accompanied by a male, whom the CI identified as "Big," and met with the CI. The CI stated, and the audio recording and surveillance confirmed, that the CI followed Davis into the residence (3328 N. 30th St) and gave her the $450 for the past debt and an additional $1000 for a "jar" (100 pills) of ecstasy.

12. The CI later stated that Davis handed the CI a baggie containing the pills of ecstasy and a small amount of marijuana wrapped in a Chase bank receipt. Surveillance observed Davis and the CI exit the building and return to their vehicles. Surveillance followed the CI from the area. I met with the CI and recovered the baggie and marijuana. I confirmed there were 101 pills of ecstasy in the baggie. I then field tested the suspected ecstasy and received a positive test for the presence of MDMA. I also field tested the marijuana and received a positive test for the presence of THC (tetrahydrocanabinols) a Schedule I controlled substance.

4

13. On Thursday, October 15, 2009, the CI made a monitored telephone call to Davis and arranged to purchase a "jar" or 100 pills of ecstasy. Davis agreed to meet the CI at the same residence on North 30th St. Davis also asked if the CI wanted to purchase a pound of marijuana that she and "Big" had picked up the previous day. After the call, law enforcement began surveilling **subject premises #1**, 6307 North 100th Street, Milwaukee, which had been identified from vehicle registration as being Davis' home address. After arranging the transaction, the CI was searched for contraband, money, and controlled substances with negative results. The CI was then outfitted with a recording device and wireless transmitter and surveilled driving to the 3300 block of North 30th Street.

14. At approximately 11:19 a.m., surveillance reported seeing a female, fitting Davis' description, exit **subject premises #1** and enter the Dodge Intrepid. At 11:33 a.m., I observed the Intrepid arrive on North 30th St. and meet with the CI. The CI stated, and the recording device confirmed, that the CI purchased 100 ecstasy pills from Davis for $1000. After the deal was complete, I recovered the baggies containing the ecstasy from the CI and field tested them. The test results were positive for the presence of MDMA (3,4 methylenedioxy-methamphetamine) a Schedule I controlled substance.

15. On Wednesday, October 28, 2009, the CI placed a telephone call to Davis and attempted to arranged to purchase a "jar" or 100 pills of ecstasy. The CI informed me that Davis told the CI she was out of the state but that she could have "Big" deliver the ecstasy. Davis said she would call "Big" to get the "pill guys" phone number off of her other cell phone and that she would have "Big" call the CI once he had the ecstasy. Davis quoted the price for the ecstasy as $1,100 and agreed to have "Big" meet the CI at the same residence on North 30th St. After arranging the transaction, the CI was searched for contraband, money, and controlled substances with negative

5

results. The CI was then outfitted with a recording device and wireless transmitter and surveilled driving to the 3300 block of North 30th Street.

16.  At approximately 3:14 p.m., I observed Davis' Dodge Intrepid arrive on North 30th St. and park by the CI. The CI later stated, and the recording device and surveillance confirmed, that the CI purchased 100 ecstasy pills from "Big" for $1100, and also received a small amount of marijuana. Although "Big" was not surveilled continuously, approximately 25 minutes after the CI and "Big" met, at 3:38 p.m., surveillance reported observing Davis' Intrepid was parked on the west side of the street in front of **subject premises #1.** After the deal was complete, I recovered the suspected ecstasy and marijuana from the CI and field tested them. The field tests were positive for the presence of MDMA and marijuana.

17.  On Monday, November 2, 2009, the CI made a telephone call to Davis and was informed that "Big" had obtained a handgun for the CI to buy. Later that same day, the CI talked to "Big" by phone about the handgun. "Big" agreed to sell the handgun to the CI for $400 the following day. "Big" also agreed to meet outside of the N. 30th St. address.

18.  On Tuesday November 3, 2009, the CI informed me that he/she that made a telephone call to "Big" and arranged to meet so that the CI could purchase a firearm from "Big." After arranging the transaction, the CI was searched for contraband, money, and controlled substances with negative results. The CI was then outfitted with a recording device and wireless transmitter and surveilled driving to the 3300 block of North 30th Street.

19.  Surveillance observed a red Cadillac parked by at **subject premises #1**. At 12:02 p.m., surveillance observed two males exit from the residence and drive away in the Cadillac. Due to the distance, surveillance was unable to determine the license plate. At 12:20 p.m., I observed a red Cadillac, Wisconsin license plate 281-FUM, drove onto N. 30th St. and park by the CI's

6

vehicle. I observed "Big" exit the vehicle and enter the CI's vehicle. The CI later informed me, and the recording device and surveillance confirmed, that the CI purchased a "Jennings" brand "Bryco 38" .380 caliber semi automatic hand gun, serial number 1157701 from "Big."

20. After the deal was complete, I recovered the handgun from the CI. The handgun was submitted to the Wisconsin State Crime Lab on November 11, 2009. On January 5, 2010, a Crime Lab Report was received confirming the Jennings handgun was later test fired and found mechanically functional. ATF Special Agent Undre Ludington has reviewed firearm records and determined that this firearm was not manufactured in the State of Wisconsin and therefore, would have had to travel in interstate commerce to be located in Wisconsin.

21. I searched Wisconsin Department of Transportation records for the red Cadillac, license plate 281-FUM. I determined that the vehicle is registered to Dave Zimmerman, dob 06-03-62. Other investigation resulted in identifying Zimmerman as being a listed renter with Christmas Y. Davis of **subject premises #1,** apartment # 4 at of 6307 N. 100th St.

22. On Monday, November 30, 2009, the CI informed me that he/she was recently contacted by Davis and offered a counterfeit $100 (US currency) bill. Davis stated the counterfeit bill would cost $50 and claimed that the CI still owed $50 for the handgun purchased on November 3, 2009. The CI informed me that he/she agreed to meet Davis at the same residence on N. 30th St. After arranging the transaction, the CI was searched for contraband, money, and controlled substances with negative results. The CI was then outfitted with a recording device and wireless transmitter and surveilled driving to the 3300 block of North 30th Street.

23. At approximately 11:42 p.m., surveillance posted at **subject premises #1,** 6307 N. 100th St., observed a black Toyota Avalon with Wisconsin registration plate 741-PYT, leaving from the residence. This was the same license plate that had previously been on Davis' Dodge Intrepid

7

and confirmed the CI's statements to me that Davis and "Big" had recently purchased a new black Toyota. At 12:06 p.m., I observed the black Toyota arrive on North 30th St. and park by the CI. The CI later informed me that he/she met with Davis, purchased the counterfeit $100 bill, and paid the $50 claimed to have been left out of the previous firearms purchase with "Big." Surveillance and the recording device confirmed the CI's statements.

24. After the transaction was complete, I met with the CI and recovered the counterfeit $100 bill. The CI then placed a recorded phone call to Davis to ask for a "stack" (quantity of ten) counterfeit $100 bills. Davis stated that the cost for 10 counterfeit bills would be $500. Davis said that the CI would have to "front" or advance the $500 to her in order to complete the deal. United States Secret Service (hereinafter USSS) Special Agent Colin Ragland later inspected the first $100 bill which the CI had purchased from Davis and confirmed that it was counterfeit.

25. On December 8, 2009, the CI telephoned "Big" and arranged to purchase ten counterfeit $100 bills. "Big" agreed to meet outside of the N. 30th St. address. At approximately 11:43 a.m., surveillance posted at **subject premises #1,** 6307 N. 100th St., observed "Big" exit the residence and drive away in the black Toyota. At 12:11 p.m., I observed the black Toyota arrive on N. 30th St. The CI later informed me, and surveillance and the recording device confirmed, that the CI met with "Big" and handed him the $500 for the counterfeit money purchase. "Big" told the CI that the "process" would take four hours and that he would call the CI when the money was done. "Big" then departed in the Toyota.

26. At 3:13 p.m., surveillance observed "Big" returning to **subject premises #1,** 6307 N. 100th St. At 5:18 p.m., the CI placed a monitored telephone call to "Big," who said that the money would not be done until 8:00 p.m. At 9:35 p.m., "Big" phoned the CI and stated he was leaving home to pick up the money. Surveillance was conducted on "Big" who was driving the

8

black Toyota. During the surveillance, "Big" was observed arriving at **subject premises #2,** 1918 N. 13th St., Milwaukee. Surveilling officers observed "Big" enter **subject premises #2**. "Big" was greeted at the door of **subject premises #2** by two black males. "Big" then departed **subject premises #2** and returned several hours later. At 11:58 p.m. surveillance was terminated due to deteriorating weather conditions. "Big" was last seen at **subject premises #2** at the time surveillance was terminated.

27. On December 9, 2009, I was contacted by the CI at approximately 1:30 a.m. The CI stated "Big" had telephoned and informed the CI the money was done. At 2:35 a.m., the CI met with "Big" and received ten counterfeit $100 bills. Due to a blizzard, agents were unable to respond to the scene and secure the money immediately.

28. On December 10, 2009, I met with the CI and recovered the ten counterfeit $100 bills. I compared the counterfeit bills to a copy of the five legitimate $100 bills which were provided to the CI as controlled buy money. I determined that two of $100 bills from the buy money, which bore serial numbers HB38204040H and AB12880746Q, had been used to manufacture the ten counterfeit bills received.

29. On January 11, 2010, the CI informed me that he/she had telephoned "Big" and arranged to purchase ten more counterfeit $100 bills the following day. On January 12, 2010, the CI informed me that "Big" agreed to meet the CI at McDonald's restaurant at 1120 Miller Parkway, West Milwaukee, Wisconsin. After arranging the transaction, the CI was searched for contraband, money, and controlled substances with negative results. The CI was then outfitted with a recording device and wireless transmitter and surveilled driving to the meet location.

30. At 9:42 a.m., I observed Davis' black Toyota arrive at 1120 Miller Parkway, Milwaukee, Wisconsin. The CI informed me, and surveillance and the recording device confirmed, that the CI met with "Big" and Davis, and handed "Big" the $500 for the counterfeit money purchase.

31. The genuine five $100 bills provided to "Big" by the CI displayed serial numbers as follows: HG29812624A, HG29812625A, HG29812626A, HG29812627A, HG29812628A. "Big" told the CI that the "process" would take four hours and that he would call the CI when the money was done. "Big" and Davis then drove away. At 10:10 a.m., surveillance observed "Big" and Davis arrive at **subject premises #2,** 1918 N. 13th Street, Milwaukee, Wisconsin. At 10:16 a.m., "Big" and Davis departed **subject premises #2**. At 4:04 p.m., surveillance observed "Big" return to **subject premises #2**. At 4:05 p.m., the CI telephoned "Big." During that call, "Big" told the CI that he ("Big") was arriving at the source of the counterfeit's residence. The CI and "Big" then made arrangements to meet at gas station at 4250 W. Greenfield Avenue, Milwaukee.

32. At 4:26 p.m., surveilling officers observed "Big" departing **subject premises #2**. At 4:44 p.m., surveillance observed "Big" driving back to the 1900 block of North 13th Street, Milwaukee, Wisconsin, although the officer then lost sight of "Big" for fear of being observed.

33. At 5:16 p.m., "Big" was observed arriving at 4250 W. Greenfield Avenue, Milwaukee, Wisconsin, and meeting with the CI, who had been searched for contraband, money and controlled substances with negative results and who was still wearing a recording device. According to the CI's later statement, which was confirmed through surveillance and the recording device, "Big" provided the CI with $1,000 in counterfeit $100 bills, all of which bore serial number HG29812625A or FK84042959A. As previously detailed in the affidavit, a genuine $100 provided to "Big" by the CI had serial number HG29812625A.

10

### D. INFORMATION OBTAINED ON JANUARY 27, 2010

34. On January 27, 2010, the CI, acting under the direction and control of law enforcement, telephoned "Big" and arranged to purchase ten more counterfeit $100 bills. In recorded telephone calls, the CI and "Big" agreed to meet at McDonalds, 1120 Miller Parkway, West Milwaukee, Wisconsin, so that the CI could pay "Big" $500 in buy money to obtain the counterfeit money.

35. After arranging the transaction, the CI was searched for contraband, money, and controlled substances with negative results. The CI was then outfitted with a recording device and wireless transmitter and surveilled walking to the meet location.

36. At 11:10 a.m., surveilling agents observed Davis' black Toyota arrive at 1120 Miller Parkway, Milwaukee, Wisconsin. The CI informed DCI SA John Culver, and surveillance and the transmitting device confirmed, that the CI met with "Big," and handed "Big" the $500 for the counterfeit money purchase.

37. After the two met, the CI left "Big's" vehicle. "Big" then drove away. At 11:22 a.m., surveillance observed "Big" arrive at **subject premises #2,** 1918 N. 13th Street, Milwaukee, Wisconsin. At 11:25 a.m., "Big" and Ward departed **subject premises #2**.

38. When "Big" and Ward exited **subject premises #2,** they entered "Big's vehicle." At 11:27 a.m., "Big's" vehicle was traffic-stopped and the two were placed under arrest.

39. "Big" was then transported to the DCI office, where he was identified and *Mirandized*. "Big" was identified as William M. Brunner (dob: 1/20/1978). In a post-arrest statement, Brunner admitted selling controlled substances, a .380 caliber firearm, and counterfeit currency to the CI. Brunner stated that he purchased the counterfeit currency from "T.O.," later identified as Cinjinio Ward.

11

40. Ward was then transported the USSS office, where he was identified and *Mirandized*. Ward was positively identified as Cinjinio L. Ward (dob: 04/27/72). In a post-arrest statement, Ward admitted manufacturing counterfeit currency on three occasions for Brunner (a/k/a "Big") between October 2009 and January 2010. Ward stated that he made 12 counterfeit $100 bills on each of those three occasions and was paid approximately $200 on each occasion.

41. Ward's residence, 1918 N. 13th St., Milwaukee, (subject premises #2) was searched pursuant to a federal search warrant. At the residence, USSS agents located items used in the manufacture of counterfeit currency, including degreasers and a color printer. Agents also recovered a counterfeit $100 bill.

**D. CONCLUSION**

42. Since this affidavit is only for the limited purpose of securing a criminal complaint, I have not set forth each and every fact known to me concerning this investigation. I have included what I believe are facts sufficient in establishing probable cause for the warrants sought.